GRIFFIS, P.J.,
dissenting:
¶ 26. The majority finds that the only reasonable interpretation of section 9.5 is that the parties intended for this section to provide a member’s exclusive right to compensation upon expulsion. I disagree and respectfully dissent.
¶ 27. In Dalton v. Cellular South, Inc., 20 So.3d 1227, 1232 (¶ 10) (Miss.2009), the supreme court held:
A contract is ambiguous if it contains conflicting clauses when the contract is read as a whole. This contract is capable of more than one reasonable interpretation as to when and how the contract can be terminated. This contract fails to provide clear direction as to which termination clause applies, without consideration of extrinsic evidence.
The court then determined that “[t]he contract at issue contains termination clauses that lack clarity and that are not harmonious.” Id. at 1233 (¶ 12). The court found “that the conflicts among the clauses create an ambiguity.” Id.
¶28. I agree that a reasonable interpretation of section 9.5 is that the payment of $19,800, the amount “calculated pursuant to Section 9.2(a),” may be interpreted to provide the expelled member’s exclusive right to compensation upon his expulsion. I dissent, however, because I find another reasonable interpretation. Therefore, I am of the opinion that this case should be reversed and remanded for the chancellor to consider the rules of contract interpretation.
¶ 29. The relevant sections of the agreement provide:
Article IX
TERMINATION OF MEMBER’S INTEREST
Section 9.1 Termination of Member’s Interest. A Member’s Membership Interest in the Company shall terminate upon any of the following occurrences:
(a) Withdrawal of a Member;
(b) Expulsion of a Member by a unanimous vote of the other Members;
(c) Loss of eligibility for membership under Article VIII;
(d) Transfers by operation of law under Article X;
(e) Retirement of a Member;
(f) Death of a Member;
(g) Permanent Disability as determined by a unanimous vote of the other Members under Section 9.4 of this Agreement.
Section 9.2 Payments to Terminated Members. Upon termination of a Member’s interest because of death or retirement, the Member shall be entitled to receive from the Company the amounts set forth below:
(a) The terminating Member shall receive an amount equal to One Thousand One Hundred and No/100 Dollars ($1,100.00) multiplied by each percentage point of Membership Interest owned by the terminating Member as set forth on Schedule “B” in lieu of his positive capital account balance;
*347 (b) The terminating Member shall be paid the total amount of One Hundred Thousand Dollars $100,000, (which will include the amount paid for the points specified in item 9.2(a) above) in full payment of such Member’s Membership Interest in the Company....
Section 9.J/. Permanent Disability. After a period of six (6) months during which the Member is, because of sickness or injury, unable to perform his main duties for the Company, a Member shall be permanently disabled upon the unanimous vote of the other Members .... At the end of the six (6) month period, the disabled Member’s Membership Interest shall be terminated and such Member shall be entitled to receive the payments as provided under Section 9.2 of this Agreement.
Section 9.5 Option to Dissolve. Upon the termination of a Member’s Membership Interest under Section 9.1(b), (c), or (d) of this Agreement, the other Members may elect either (1) to pay an amount equal to the terminated Member[’]s points as calculated pursuant to Section 9.2(a) less any debt to Company; or (2) to dissolve the Company, in which case all Members (including the terminated Member) shall share in the liquidation proceeds, if any, according to Article XI of this Agreement.
Section 9.6 Payments upon Withdrawal. In the event a Member decides to withdraw (Section 9.1(a)) from the Company, the remaining Members shall acquire the withdrawing Member’s Membership Interest in the Company upon the payment of the sum due under Section 9.2(a) only, which payment may be either in cash or partly in cash and partly in assets at their current market value. The assets to be taken must be agreed to by the remaining Members. The payment shall be for the Member’s Membership Interest. Any debt of said Member to the Company shall be deducted and withheld from the final amount due.
¶ 30. We must interpret section 9.5. This section gives the remaining members a choice. They must choose to either pay Martindale $19,800 or dissolve and liquidate the company. If they chose to dissolve, then the company would be liquidated. All assets would be valued, sold and distributed to the members based on their percentage of ownership. Upon liquidation, Martindale, and each of the other members, would thereby receive full payment for their “Membership Interest.”
¶ 31. The members chose not to dissolve the company. Instead, they chose to pay Martindale $19,800. What was this payment for? Was it compensation for Martindale’s “Membership Interest?” Or, was it compensation for Martindale’s relinquishment of the right to seek dissolution? I do not know. The payment allowed the remaining members to continue practicing law under the Hortman Harlow name without interruption, and without Martin-dale.
¶ 32. The agreement specifically states that the company will pay $19,800 to a member who retires or dies as payment “in lieu of his positive capital account balance.” Section 9.2. More emphatically, the agreement states that the company will pay $19,800 to a member who voluntarily withdraws, and “[t]he payment shall be for the Member’s Membership Interest.” Section 9.6.
¶ 33. The language is slightly different for a member who becomes permanently disabled. For a disability, the operating agreement provides that “the disabled Member’s Membership Interest shall be terminated[,] and such Member shall be entitled to receive the payments as provided under section 9.2 of this Agreement.” *348 Section 9.4. The disabled member would receive $100,000, under section 9.2(b) for his membership interest, and this amount would include $19,800, under section 9.2(a) for his positive capital account balance.
¶ 34. The language use in section 9.5 is different than the language used in sections 9.2, 9.4 or 9.6. The heading of section 9.5 is “Option to Dissolve.” The heading of section 9.2 is “Payments to Terminated Members,” section 9.4 is “Permanent Disability,” and section 9.6 is “Payments Upon Withdrawal.” If section 9.5 was intended to be the sole payment to an expelled member, I would expect the section to be titled “Payments upon Expulsion” or something similar.[5] Instead, section 9.5 reads:
Section 9.5 Option to Dissolve. Upon the termination of a Member’s Membership Interest under Section 9.1(b) ... of this Agreement, the other Members may elect either (1) to pay an amount equal to the terminated Member[]s points as calculated pursuant to Section 9.2(a) less any debt to Company; or (2) to dissolve the Company, in which case all Members (including the terminated Member) shall share in the liquidation proceeds, if any, according to Article XI of this Agreement.
(Emphasis added).
¶ 35. Section 9.5 does not state that it is payment “in lieu of his positive capital account balance” or for his “Membership Interest.” Sections 9.2 and 9.6. The exclusion of such language indicates that section 9.5 could be reasonably interpreted as payment as consideration for the remaining member’s decision to not seek dissolution. The expelled member would retain the right to his capital account.
¶ 36. In footnote 3, the majority argues that “section 9.5 specifically incorporates section 9.2(a)’s method for calculating an expelled member’s payment. And section 9.2(a) expressly, and very clearly, provides that such payment is made ‘in lieu of a member’s positive capital account.’ ” This language proves an ambiguity in the agreement.
¶ 37. Section 9.4 specifically incorporates section 9.2, yet section 9.5 does not. Section 9.4 states that a “disabled Member’s Membership Interest shall be terminated and such Member shall be entitled to receive the payments as provided under Section 9.2 of this Agreement.” (Emphasis added). Thus, a terminated disabled Member is entitled to receive $19,800 (section 9.2(a)), for his positive capital account balance, and an additional amount up to a total payment of $100,000 (section 9.2(b)), for his membership interest. Section 9.4 says that a disabled Member’s interest is terminated, and he is to be paid “as provided under section 9.2” for “full payment of such Member’s Membership Interest in the Company.”
¶ 38. Section 9.5 uses completely different language. If section 9.5 said the expelled member was to be paid “as provided under section 9.2,” I would agree with the majority. It does not. Instead, section 9.5 says, “Option to Dissolve. Upon the termination of a Member’s Membership Interest under Section 9.1(b) ... the other Members may elect either (1) to pay an amount equal to the terminated Member's points as calculated pursuant to Section 9.2(a) less any debt to Company; or (2) to dissolve the Company....” Hence, the ambiguity and my dilemma. *349 What is the payment as calculated pursuant to section 9.2(a)” for? I do not know. It could be interpreted as payment for his membership interest or it could be consideration to allow the remaining members to continue the company and not dissolve it.
¶ 39. The majority defines our difference of opinion in footnote 3. The majority adds language, not present in the agreement and not based on a reasonable inference, to reach its conclusion. I read only the words and language used by the parties in the agreement. I can only conclude that the agreement used different language for a reason. It is from the use of the language in section 9.4 (“as provided under Section 9.2”) as opposed to the language in section 9.5 (“as calculated pursuant to Section 9.2(a)”) that I find an ambiguity.
¶ 40. Under the agreement, each member’s ownership interest is only in his or her capital account. The company’s “property” is defined in section 1.9 as:
all those assets and liabilities of the Company as represented by the capital accounts of the partners (Members) as set forth in Schedule “A” attached hereto and made part hereof together with any and all other property, whether real or personal, interests, assets or rights owned or held by or on behalf of the Company at any time hereafter.
Schedule “A” defines “Capital Accounts” as:
The Capital Accounts of the Members are interests in all assets and liabilities of the Company as represented by the net capital accounts listed [the same to include, but is not limited to, all checking and savings accounts (including the firm’s Trust Account) all at AmSouth Bank, all accounts receivable, all work in progress (time and expenses) recorded in the accounting system, all furniture, equipment and other personal property reflected in the depreciation schedule and located in the office building at 414 West Oak Street, Laurel, Mississippi, all files (open and closed) wherever located, all accounts and notes payable, etc.].... [6]
(Brackets in original).
¶ 41. I recognize that the standard of review is de novo. I have viewed the facts in the light most favorable to Martindale, the nonmovant. Although I agree that the majority’s interpretation is reasonable, I am of the opinion that there is more than one reasonable interpretation of section 9.5. I conclude that there is an ambiguity in the agreement. Thus, I am of the opinion that there is a genuine issue of a material fact in dispute, and Hortman Harlow is not entitled to a judgment as a matter of law. I would reverse the summary judgment and remand this case for further proceedings.
LEE, C.J., AND ISHEE, J., JOIN THIS OPINION.

. I recognize that “Section 13.8, Headings " says "[t]he headings in this Agreement are for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any of its provisions.” As such, my opinion is not based on the heading that was used or not used.

. Although not relevant to the outcome of this appeal, the agreement appears to have a contradiction in section 6.4 which provides that the company will use the cash method of accounting and the definition of "Capital Accounts” which requires the inclusion of amounts based on the accrual method of accounting. Based on capital account definition in Schedule "A,” Martindale’s capital account would not simply be based on actual profits and loss from prior years, which were based on the cash method of accounting, but would also include all "work in process (time and expenses) recorded in the accounting system,” i.e. the McDaniel contingency fee case.